DR. MICHAEL FINNUCCI
21840 N. 39TH STREET
PHOENIX, AZ 85050

☒ FILED    LODGED
___ RECEIVED    ___ COPY

JUL 1 4 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DR. MICHAEL FINNUCCI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., a national banking association,<br><br>Defendant. | Case No. ___**CV26-04892-PHX-KML**___<br><br>**COMPLAINT**<br>(1) Violations of RESPA, 12 U.S.C. § 2605<br>(2) Violations of FCRA, 15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)<br>(3) Violations of the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq. (senior enhancement, § 44-1531(B))<br>(4) Wrongful Servicing / Lack of Authority to Collect, Force-Place Insurance, and Furnish<br>(5) Declaratory and Injunctive Relief<br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Dr. Michael Finnucci, appearing *pro se*, brings this action against Defendant JPMorgan Chase Bank, N.A. ("Chase"), and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) over Plaintiff's claims arising under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681n, 1681o, 1681s-2(b).

2. This Court has supplemental jurisdiction over Plaintiff's state-law and common-law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy.

3. Venue is proper in the District of Arizona, Phoenix Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, and the real property at issue is situated in Maricopa County, Arizona.

## II. PARTIES

4. Plaintiff Dr. Michael Finnucci is a natural person, a citizen of the State of Arizona, age 71 years, residing at 21840 N. 39th Street, Phoenix, Arizona 85050. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1681a(c), a "borrower" within the meaning of 12 U.S.C. § 2605, and a person aged 65 or older within the meaning of A.R.S. § 44-1531(B).

5. Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national banking association chartered by the Office of the Comptroller of the Currency (OCC Charter No. 8), with its principal place of business at 1111 Polaris Parkway, Columbus, Ohio 43240. Chase is authorized to transact business in Arizona and maintains a registered agent for service of process: CT Corporation System, 3800 N. Central Avenue, Suite 460, Phoenix, Arizona 85012. Chase holds itself out as a "servicer" within the meaning of 12 U.S.C. § 2605(i)(2) and as a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2. As alleged below, Chase has also held itself out, in writing, as the "lender" and "mortgagee" of the Loan, without producing evidence of such ownership or authority.

## III. FACTUAL ALLEGATIONS

### A. The Loan and the contractual P&I

6. At all relevant times material to this action Chase has purported to service a residential mortgage loan secured by Plaintiff's primary residence at 21840 N. 39th Street, Phoenix, AZ 85050 (the "Property"), bearing Chase account number 4031307472 (the "Loan").

7. The contractual monthly principal-and-interest payment on the Loan is fixed at $1,852.69 for the term of the loan. Chase admitted this figure in writing in its May 28, 2026 response (Reference ID eOfA5LubAC / CC015, signed by Steve Brooks, Managing Director).

### B. Servicing transfer, chain-of-title defects, and Chase's self-identification as "lender" and "mortgagee"

8. On or about July 1, 2023, Chase took over servicing of the Loan. To Plaintiff's knowledge, no confirmation of investor ownership accompanied that transfer.

9. On December 12, 2024, Plaintiff queried the Fannie Mae loan-lookup tool, which is the public-facing facility maintained by Fannie Mae to confirm whether it owns a particular loan. The query returned a result of "No Match" for the Loan. Plaintiff is therefore informed and believes,

and on that basis alleges, that Fannie Mae is not the owner of the Loan, contrary to representations made or implied by Chase at the time of transfer.

10. On or about May 1, 2024, Chase submitted a written communication to State Farm Insurance (Plaintiff's hazard-insurance carrier) declaring that Chase was the "mortgagee" of the Property. In reliance on that representation, State Farm modified its policy records to reflect Chase as mortgagee. Chase made this representation without producing to Plaintiff any evidence that it owned or held the note for an identified investor.

11. Chase has thereafter identified itself in multiple written communications — including its January 3, 2025 escrow-closure notice, its furnishing to the three nationwide consumer reporting agencies, and routine monthly statements — as the "lender" of the Loan, in addition to or in lieu of its description as "servicer."

12. Despite five separate written demands for validation of debt and chain-of-title (see Subsection F below), Chase has not produced to Plaintiff a complete chain of title sufficient to establish Chase's authority to collect, force-place insurance, modify escrow, or furnish credit information concerning the Loan. Under Arizona's codification of UCC Article 3, transfer of a negotiable instrument to a new "person entitled to enforce" the instrument occurs by *negotiation* — a transfer of possession together with the necessary endorsement (A.R.S. § 47-3201) — not by allonge alone; an allonge is merely a paper affixed to the instrument used to carry an endorsement when there is no space on the instrument itself (A.R.S. § 47-3204). To establish its authority Chase must produce: (i) the original promissory note executed by Plaintiff bearing all endorsements (whether on the note itself or on any allonge(s) affixed to the note); (ii) evidence of negotiation establishing Chase as the *holder* of the note or as a *nonholder in possession with the rights of a holder* under A.R.S. §§ 47-3201, 47-3203, and 47-3301, including evidence of possession of the note by Chase or its custodian on Chase's behalf; (iii) recorded assignments of the deed of trust in the Maricopa County Recorder's chain to Chase or its trustee; and (iv) identification of the current note-holder, investor, or beneficial owner, and, if Chase services for another, evidence of the servicing relationship and of the holder's rights.

### C. The escrow waiver and improper re-establishment

13. Effective January 14, 2025, the escrow account associated with the Loan was waived and closed at Plaintiff's request and with Chase's written consent, as confirmed by Chase's escrow-

waiver letter dated January 3, 2025. After that date Plaintiff was responsible for paying property taxes and hazard insurance directly.

14. Chase admitted in its May 28, 2026 letter that the account was non-escrow from the monthly statement dated June 17, 2025 through the statement dated October 28, 2025, and that escrow billing was "re-established" only after lender-placed insurance was added in November 2025.

## D. Force-placed (lender-placed) insurance over a known valid hazard policy

15. At all relevant times Plaintiff maintained in force a private hazard insurance policy with State Farm Insurance on the Property meeting the requirements of the loan documents.

16. Chase had actual knowledge of Plaintiff's State Farm policy at least as early as May 1, 2024, when Chase wrote to State Farm asserting mortgagee status against that very policy.

17. Chase admitted in writing that it purchased lender-placed insurance ("LPI") effective June 8, 2025, at a premium of $651.00, and that it charged the premium to Plaintiff's Loan account on August 30, 2025.

18. Chase did not provide Plaintiff with the two advance written notices spaced at least 45 days apart required by 12 CFR § 1024.37(c) and (d), and did not confirm any lapse in Plaintiff's hazard insurance before charging the LPI premium, despite knowing the identity and contact information of Plaintiff's carrier.

19. Following the LPI charge, Chase issued a September 30, 2025 escrow analysis re-establishing escrow billing and increasing the total monthly payment to $1,983.79 effective the December 1, 2025 payment. Prior to that change, Chase had been collecting $1,977.39 per month against the $1,852.69 contractual P&I obligation.

## E. Suspense / unapplied-funds account

20. Plaintiff has tendered timely monthly payments throughout the relevant period.

21. Chase has diverted Plaintiff's payments to a suspense or unapplied-funds account rather than crediting them to principal and interest as required by Regulation Z, 12 CFR § 1026.36(c)(1).

22. Chase has admitted that the suspense balance as of its May 28, 2026 review was $1,266.65, and admitted that payments made on February 17, 2026, March 19, 2026, and April 14, 2026 were initially placed in suspense and only later applied.

23. Chase's diversion of payments to suspense has artificially manufactured the appearance of delinquency on the Loan.

*F. Five rounds of unresolved QWRs / Notices of Error (May 2024 – June 2026)*

24. Plaintiff has sent Chase a sustained series of written Qualified Written Requests ("QWRs"), Notices of Error ("NOEs"), and debt-validation demands under 12 U.S.C. § 2605(e) and 12 CFR §§ 1024.35 and 1024.36:

25. **First QWR / Debt Validation Demand** — mailed May 29, 2024; receipt confirmed by Chase's certified-mail acknowledgement on June 3, 2024; acknowledgment of receipt issued June 11, 2024; substantive response on June 22, 2024 and June 24, 2024. No corrections were made.

26. **Second QWR / Debt Validation Demand** — mailed December 12, 2024. No corrections were made.

27. **Third QWR / Debt Validation Demand** — mailed September 21, 2025. No corrections were made.

28. **First Notice of Error / QWR** — mailed March 24, 2026; Chase responded by letter dated April 2, 2026, acknowledging certain factual matters but failing to correct any of the errors identified.

29. **Second Notice of Error / QWR** — mailed April 14, 2026; Chase responded by letter dated May 28, 2026 (postmarked June 1, 2026; received June 8, 2026), again failing to correct the identified errors.

30. **Third Notice of Error / QWR** — mailed June 9, 2026 to Chase's designated QWR address at Mail Code LA4-6911, 700 Kansas Lane, Monroe, LA 71203-4774.

31. On June 10, 2026, Plaintiff sent Chase Legal — at three separate addresses, including General Counsel Stacey Friedman, Esq.; Chase Legal Papers Served, Mail Code LA2-7100, Ruston, LA; and CT Corporation System, Phoenix, AZ — a Pre-Litigation Demand Letter via USPS Certified Mail, quantifying damages of $63,799 and demanding cure within 30 days.

31A. Chase failed to respond to the June 10, 2026 Pre-Litigation Demand Letter. The 30-day response period expired on July 10, 2026 without any substantive response, cure tender, or settlement offer from Chase. The three-day grace period expired on July 13, 2026, also without response. As of the filing of this Complaint, Chase has neither acknowledged the demand nor tendered any cure of the disputed servicing, escrow, and furnishing conduct. Chase's silence in the face of a documented $63,799 pre-litigation demand — served on three separate corporate addresses including the office of General Counsel Stacey Friedman, Esq. — is a further datum of the objective recklessness that grounds Plaintiff's willfulness allegations under 15 U.S.C. § 1681n and the pattern-or-practice allegations under 12 U.S.C. § 2605(f).

32. In its May 28, 2026 response, Chase asserted that the March 24 and April 14, 2026 NOEs were not entitled to QWR treatment because they were not sent to Chase's "designated address" for QWRs. That position is foreclosed by Chase's own conduct: Chase substantively responded to those NOEs on April 2 and May 28, 2026, on the merits and after a complete account review, thereby waiving any procedural objection; Chase did not clearly and conspicuously disclose the designated QWR address to Plaintiff in the manner required by 12 CFR § 1024.36(b) before the NOEs were sent; and in any event, the June 9, 2026 NOE was sent to the designated QWR address (Mail Code LA4-6911, 700 Kansas Lane, Monroe, LA 71203-4774) and thus indisputably triggers RESPA's response and adverse-reporting-shield obligations.

### G. FCRA disputes and adverse furnishing

33. Beginning on December 14, 2024, Plaintiff disputed Chase's inaccurate furnishing through each of the three nationwide consumer reporting agencies (Experian, Equifax, and TransUnion) under 15 U.S.C. § 1681i, in five separate rounds: December 14, 2024; June 17, 2025; and three rounds in 2026, the most recent on June 9, 2026.

34. Plaintiff's June 17, 2025 dispute specifically advised the CRAs that Chase was reporting an inflated principal balance and an incorrect monthly payment amount; the CRAs acknowledged receipt on July 11, 2025; no corrections were made.

35. Chase, upon notice of those disputes from the CRAs, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b), *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147 (9th Cir. 2009), and the analytic framework adopted in *Sessa v. Trans Union*, 74 F.4th 38 (2d Cir. 2023).

36. By letter dated April 24, 2026, Chase wrote to Plaintiff confirming that it had asked Experian, Equifax, TransUnion, and Innovis to show that Plaintiff's March 2026 payment "wasn't late" — a written admission that Chase had previously furnished inaccurate adverse information concerning the March 2026 payment.

36A. Chase's post-notice conduct further confirms objective recklessness under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007). Before this action was commenced, Chase received actual, contemporaneous, and repeated written notice of the specific inaccuracies alleged herein — the phantom PITI-conflation delinquency reflecting a scheduled monthly payment of $1,977 against a contractual principal-and-interest obligation of $1,852.69, the dual account identifiers ending *5914 (origination) and *7472 (Chase servicing), and the re-aged February 2024 payment cell — through four separate and independent regulatory channels, each opened before this action was commenced: (i) Consumer Financial Protection Bureau Complaint No. 260610-33947254, filed June 10, 2026; (ii) Consumer Financial Protection Bureau Complaint No. 260623-34546094, filed June 23, 2026; (iii) Arizona Attorney General, Consumer Protection & Advocacy Section, File No. CIC 26-013122, opened July 6, 2026 (prior confirmation No. WRCBB-B5EX8); and (iv) Office of the Comptroller of the Currency, Customer Assistance Group, Case No. CS0444100, opened July 7, 2026. Each channel placed Chase on notice of the same documented defects and afforded Chase a supervised opportunity to correct its furnishing and servicing; Chase nonetheless continued to furnish and to "verify" the challenged information rather than correct it. This convergence of four independent regulatory notices, standing alongside Plaintiff's June 10, 2026 Certified-Mail pre-litigation demand (Paragraphs 31 and 31A above) and Plaintiff's direct Notices of Error and Requests for Information, forecloses any contention that Chase's continued furnishing rested on an innocent misreading of an unsettled legal question and independently satisfies the knowledge-or-reckless-disregard element of willfulness under 15 U.S.C. § 1681n. This paragraph is incorporated by reference into Count Two.

37. Chase has continued to furnish adverse delinquency information after Plaintiff's disputes and during the 60-day window following Plaintiff's Notices of Error, in violation of the adverse-reporting shield at 12 CFR § 1024.35(i)(1).

## H. Chase's written admissions

38. The following written admissions appear in Chase's own April 2, 2026, April 24, 2026, and May 28, 2026 letters and constitute binding judicial admissions for purposes of this action:

39. **Contractual P&I.** Chase admits: "According to your promissory note, the principal and interest portion of your monthly payment is fixed at $1,852.69 for the term of the loan."

40. **Escrow waiver.** Chase admits the escrow account was "closed effective January 14, 2025" and that the account was non-escrow from June 17, 2025 through October 28, 2025.

41. **LPI.** Chase admits LPI was "purchased effective June 8, 2025, at a premium of $651.00" and "charged and paid from your account on August 30, 2025."

42. **New billed amount.** Chase admits the escrow analysis "resulted in an adjusted monthly payment of $1,983.79," effective the December 1, 2025 payment.

43. **Suspense.** Chase admits a current suspense-account balance of $1,266.65 and admits that payments made on February 17, March 19, and April 14, 2026 were "initially placed in the suspense account" and only later applied.

44. **Inaccurate furnishing.** Chase admits that on April 24, 2026 it asked Experian, Equifax, TransUnion, and Innovis to show that Plaintiff's March 2026 payment was not late — a written admission of previously inaccurate furnishing.

45. **Withholding of policies.** Chase admits it withheld from its QWR response "the written policies and procedures we rely on concerning suspense accounts, partial payments, application of periodic payments, and late-fee assessment" on the asserted ground that they are "proprietary and confidential business information."

## I. Senior consumer status

46. Plaintiff is 71 years old and lives on a fixed retirement income. Chase's pattern of conduct — a two-year course of unresolved QWRs, manufactured delinquency, force-placed insurance over a known valid hazard policy, suspense-account misapplication, and false adverse credit furnishing — has inflicted disproportionate harm on an elderly consumer.

47. Chase is a national bank subject to OCC supervisory authority and OCC Bulletin 2011-24 (Elder Financial Exploitation), which directs national banks to identify, prevent, and remediate exactly this kind of conduct against older customers.

48. On June 10 and 11, 2026, Plaintiff filed parallel consumer complaints with the CFPB (with a cross-referral request to the Office for Older Americans, 12 U.S.C. § 5493(g)), the OCC Customer Assistance Group, and the Arizona Attorney General Consumer Protection Section.

### J. June 18, 2026 robocall and payment-misapplication evidence

49. **June 18, 2026 robocall.** At approximately 9:15 a.m. Mountain Time on June 18, 2026, Plaintiff received an automated telephone call on his cellular telephone from telephone number 1-877-211-4669. The caller identified itself as "Chase Mortgage Outreach." The number is classified by Nomorobo as a "Mortgage Robocall" and has been so classified since July 2018. The call was placed using an automatic telephone dialing system and/or an artificial or prerecorded voice within the meaning of 47 U.S.C. § 227(a) and (b) and 47 C.F.R. § 64.1200.

50. The call followed Chase's receipt of Plaintiff's June 9 NOE, June 10 pre-litigation demand letter, and June 13 Supplemental Notice. Plaintiff had given no prior express consent to receive automated marketing or servicing calls on his cellular number and, on June 20, 2026, mailed to four Chase addresses (LA2-7100, LA4-6911, Friedman/General Counsel, and CT Corporation) a written Notice of Revocation of Telephone Consent under 47 C.F.R. § 64.1200(a)(2).

51. **Payment-misapplication evidence.** Between December 17, 2025 and June 21, 2026, Chase transmitted to Plaintiff fourteen (14) automated emails from no.reply.alerts@chase.com confirming (i) Chase's receipt of seven (7) separate $1,860.00 payments and (ii) successively higher "Amount due" figures rising from $4,140.04 (January 17, 2026 statement) to $4,603.19 (June 21, 2026 re-issued statement) — a $463.15 manufactured increase — despite uninterrupted payments exceeding the contractual P&I of $1,852.69 by $7.31 per month. Escrow on the Loan has been waived since January 14, 2025.

52. On at least two occasions, Chase issued a periodic statement and then "re-issued" the same statement days later showing a higher "Amount due" for the same due date: April 16, 2026 ($4,417.93) re-issued April 19, 2026 ($4,510.56); and June 5, 2026 ($4,510.56) re-issued June 21,

2026 ($4,603.19). These retroactive upward adjustments were made without prior notice or explanation to Plaintiff.

## IV. CLAIMS FOR RELIEF

### COUNT ONE — Violations of RESPA, 12 U.S.C. § 2605 and Regulation X, 12 CFR Part 1024

53. Plaintiff incorporates paragraphs 1–52 as if fully set forth herein.

54. Chase violated 12 U.S.C. § 2605(e) and 12 CFR §§ 1024.35 and 1024.36 by failing to conduct a reasonable investigation of Plaintiff's five rounds of QWRs and NOEs and by failing to correct the errors identified therein.

55. Chase's position that the March 24 and April 14, 2026 NOEs were not entitled to QWR treatment is foreclosed by waiver (substantive response on the merits), by Chase's failure to clearly and conspicuously disclose the designated address as required by 12 CFR § 1024.36(b), and by the existence of the June 9, 2026 NOE sent to Chase's designated QWR address (Mail Code LA4-6911).

56. Chase violated 12 CFR § 1024.17 by mishandling Plaintiff's escrow account after the January 14, 2025 waiver, including by "re-establishing" escrow billing in November 2025 in connection with an LPI charge that should not have been imposed.

57. Chase violated 12 CFR § 1024.37(c) and (d) by force-placing insurance without the required advance notices and without confirming a lapse in Plaintiff's hazard policy, despite having actual knowledge of Plaintiff's State Farm coverage.

58. Chase violated 12 CFR § 1024.35(i)(1) by furnishing adverse credit information within the 60-day window following Plaintiff's Notices of Error.

58A. **Defective Acknowledgment of Notice of Error.** Chase further violated 12 C.F.R. § 1024.35(d) by failing to provide a written acknowledgment of Plaintiff's Notices of Error that complies with the regulation. On a date no later than June 17, 2026, Chase issued a one-page form letter (Letter ID 663jrT4O34, Internal Code CC233) from Mail Code LA4-6960 (Monroe, LA) addressed to Plaintiff stating only: "We're writing about the question or request we recently received about your mortgage loan. We're researching the issue and will send you a letter when

we complete our review." That letter (i) does not identify which submission it acknowledges; (ii) does not cite 12 C.F.R. § 1024.35 or any provision of Regulation X; (iii) does not state the date by which Chase will substantively respond as required by § 1024.35(e); (iv) does not identify the assigned NOE coordinator or provide a direct contact channel; (v) does not originate from the designated QWR/NOE channel at Mail Code LA4-6911 that received Plaintiff's submissions; and (vi) is unsigned by any named individual. The defective acknowledgment is a standalone violation of 12 C.F.R. § 1024.35(d) and is independent of, and in addition to, Chase's failure to substantively respond under 12 C.F.R. § 1024.35(e).

59. Chase's violations form a pattern or practice of noncompliance, evidenced by five rounds of unresolved QWRs spanning more than two years and now extending to Chase's acknowledgment obligations under § 1024.35(d), entitling Plaintiff to statutory damages, actual damages, and costs and (where applicable) attorneys' fees under 12 U.S.C. § 2605(f).

### COUNT TWO — *Willful and Negligent Violations of FCRA, 15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)*

60. Plaintiff incorporates paragraphs 1–52 as if fully set forth herein.

61. As a furnisher of information, Chase owed Plaintiff duties under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation of disputes communicated by the CRAs and to refrain from continuing to furnish information known or reasonably believed to be inaccurate.

62. Chase failed to conduct a reasonable investigation in any of the five rounds of FCRA disputes spanning December 2024 through June 2026, despite Plaintiff providing detailed, specific, and contemporaneous documentation establishing the inaccuracy.

63. Chase's conduct was willful within the meaning of 15 U.S.C. § 1681n and *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007), because Chase's interpretation of its FCRA obligations was objectively unreasonable in light of: (i) Chase's own April 24, 2026 written admission of prior inaccurate March 2026 furnishing; (ii) Chase's admission that the contractual P&I figure is $1,852.69; (iii) the existence of a valid escrow waiver; (iv) Chase's actual knowledge of Plaintiff's State Farm hazard policy; (v) the operation of the 60-day adverse-reporting shield; (vi) the cumulative two-year written-notice record; and (vii) Chase's contemporaneous email records confirming uninterrupted payments exceeding contractual P&I while issuing statements reciting escalating delinquency.

64. In the alternative, Chase's conduct was negligent within the meaning of 15 U.S.C. § 1681o.

65. Plaintiff is entitled to actual damages, statutory damages (where applicable), punitive damages, and costs under 15 U.S.C. §§ 1681n and 1681o.

**COUNT THREE — *Violations of the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq. (senior-victim enhancement § 44-1531(B))***

66. Plaintiff incorporates paragraphs 1–52 as if fully set forth herein.

67. Chase, in connection with the servicing of a residential mortgage on Arizona real property, engaged in deception, misrepresentation, and concealment of material facts within the meaning of A.R.S. § 44-1522, including: (i) representing to State Farm Insurance on May 1, 2024 that Chase was the "mortgagee" of the Property without producing evidence of such status; (ii) holding itself out to Plaintiff and to the CRAs as the "lender" of the Loan without producing evidence of such status; (iii) collecting escrow-padded payments after a valid escrow waiver; (iv) force-placing insurance without proper notice and despite valid hazard coverage of which Chase had actual knowledge; (v) diverting payments to suspense and reporting Plaintiff as delinquent; (vi) misrepresenting Plaintiff's payment status to the three CRAs over a two-year period; and (vii) issuing periodic mortgage statements reciting an inflated and inaccurate "Amount due" while contemporaneously confirming by email Chase's receipt of payments exceeding contractual P&I, and retroactively re-issuing such statements without notice.

68. Plaintiff relied on Chase's misrepresentations and omissions to his detriment.

69. Plaintiff is 71 years old, qualifying as a senior consumer under A.R.S. § 44-1531(B), which authorizes civil penalties of up to $10,000 per violation in addition to penalties under § 44-1531(A). Each of the categories of conduct in Paragraph 67 above constitutes a separate violation subject to per-violation enhancement.

70. Plaintiff is entitled to actual damages, restitution, and (to the extent applicable) attorneys' fees and costs under Arizona law.

**COUNT FOUR — *Wrongful Servicing / Lack of Authority to Collect, Force-Place Insurance, and Furnish***

71. Plaintiff incorporates paragraphs 1–52 as if fully set forth herein.

72. Chase has held itself out to State Farm Insurance, to the three nationwide CRAs, and to Plaintiff as the "mortgagee" and "lender" of the Loan. Despite five separate written demands for validation of debt and chain-of-title, Chase has not produced to Plaintiff evidence sufficient to establish that Chase is a "person entitled to enforce" the note under A.R.S. § 47-3301 — specifically, the original note bearing all endorsements (on the note or on any affixed allonge(s)), evidence of negotiation under A.R.S. §§ 47-3201 and 47-3203 establishing Chase as the holder or as a nonholder in possession with the rights of a holder (including evidence of possession by Chase or its custodian), recorded assignments of the deed of trust to Chase or its trustee, and identification of the current note-holder, investor, or beneficial owner.

73. A query of the Fannie Mae loan-lookup tool on December 12, 2024 returned a result of "No Match" for the Loan, contrary to representations made or implied by Chase at the July 1, 2023 servicing transfer.

74. Without lawful authority to collect, to modify escrow, to force-place insurance, or to furnish credit information concerning the Loan, Chase has nonetheless engaged in each of those activities to Plaintiff's detriment.

75. Plaintiff is entitled to a declaration that, pending Chase's production of complete chain-of-title evidence, Chase lacks authority to (i) collect amounts in excess of the contractual P&I of $1,852.69, (ii) maintain the LPI charge of $651.00, (iii) maintain the post-waiver re-established escrow, and (iv) furnish credit information concerning the Loan; and to disgorgement of any amounts collected, charged, or reported without such authority.

### COUNT FIVE — Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200

76. Plaintiff incorporates paragraphs 1–52 as if fully set forth herein.

77. The Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii), and its implementing regulation, 47 C.F.R. § 64.1200(a)(1)–(2), prohibit any person from making any call (other than a call made for emergency purposes or with the prior express consent of the called party) using any automatic telephone dialing system or any artificial or prerecorded voice to any telephone number assigned to a cellular telephone service.

78. On June 18, 2026 at approximately 9:15 a.m. Mountain Time, Chase (acting directly or through an agent identifying itself as "Chase Mortgage Outreach") placed an automated call from telephone number 1-877-211-4669 to Plaintiff's cellular telephone using an automatic telephone dialing system and/or an artificial or prerecorded voice. The originating number is listed in the Nomorobo public database as a "Mortgage Robocall" and has been so listed since July 2018, reflecting a pattern of automated dialing.

79. Plaintiff did not give prior express consent (and, in any event, no prior express written consent within the meaning of 47 C.F.R. § 64.1200(a)(2)) to receive automated or prerecorded calls regarding the Loan on his cellular telephone. On June 20, 2026, Plaintiff mailed written Notices of Revocation of Telephone Consent under 47 C.F.R. § 64.1200(a)(2) to four Chase addresses (LA2-7100, LA4-6911, Office of the General Counsel/Stacey Friedman, and CT Corporation as Chase's Arizona registered agent).

80. Plaintiff is entitled under 47 U.S.C. § 227(b)(3) to (i) an injunction prohibiting further violations, (ii) statutory damages of $500 per violation, and (iii) treble damages of up to $1,500 per violation upon a showing that Chase's violation was knowing or willful. Chase's knowledge of and continued use of a number with a long-standing public "Mortgage Robocall" classification, in the absence of consent and against the backdrop of Plaintiff's pre-litigation correspondence, supports a finding of knowing or willful violation.

### COUNT SIX — *Violations of TILA/Regulation Z Payment Crediting, 15 U.S.C. § 1639f; 12 C.F.R. § 1026.36(c) & § 1026.41(d); and RESPA Payment-Application Duty, 12 U.S.C. § 2605(k)(1)(C)*

81. Plaintiff incorporates paragraphs 1–52 as if fully set forth herein.

82. Regulation Z, 12 C.F.R. § 1026.36(c)(1)(i), promulgated under the Truth in Lending Act, 15 U.S.C. § 1639f, requires a mortgage servicer to credit a periodic payment to the consumer's loan account as of the date of receipt. A "periodic payment" is defined as an amount sufficient to cover principal, interest, and escrow (if applicable).

83. Escrow on the Loan has been waived since January 14, 2025. Chase admits that contractual principal and interest is $1,852.69 per month. Each $1,860.00 payment Chase confirmed receiving between December 17, 2025 and June 4, 2026 therefore constituted a periodic payment that Chase was required to credit on the date of receipt.

84. Chase did not credit those payments as required. Instead, Chase issued successive monthly statements (and, on at least two occasions, retroactively "re-issued" statements days later) reciting an escalating "Amount due" rising from $4,140.04 on January 17, 2026 to $4,603.19 on June 21, 2026 — a $463.15 manufactured increase — in violation of 12 C.F.R. § 1026.36(c)(1)(i) and 12 C.F.R. § 1026.41(d).

85. Chase's maintenance of a $1,266.65 suspense balance as to payments that exceeded the periodic-payment amount further violates 12 C.F.R. § 1026.36(c)(1)(ii), which permits suspense only where a payment is less than a periodic payment.

86. The same conduct constitutes a covered error under RESPA, 12 U.S.C. § 2605(k)(1)(C) and 12 C.F.R. § 1024.35(b)(2)–(4) and (11), and was the subject of Plaintiff's Supplemental Notice of Error II mailed contemporaneously with the filing of this Complaint.

87. Plaintiff is entitled to actual damages and statutory damages under 15 U.S.C. § 1640 and 12 U.S.C. § 2605(f), including damages reflecting Chase's pattern or practice of payment misapplication, together with costs and (where applicable) attorneys' fees.

### COUNT SEVEN — *Declaratory and Injunctive Relief*

88. Plaintiff incorporates paragraphs 1–87 as if fully set forth herein.

89. A justiciable controversy exists regarding (i) the proper crediting of Plaintiff's payments, (ii) the validity of the $651.00 LPI charge, (iii) the operation of the January 14, 2025 escrow waiver, (iv) the accuracy of Chase's furnishing to the CRAs, (v) Chase's authority to enforce, modify, or furnish information concerning the Loan, and (vi) Chase's use of automated telephone calls without consent.

90. Plaintiff is entitled under 28 U.S.C. §§ 2201–2202 to a declaration of his rights and Chase's obligations.

91. Plaintiff is entitled to injunctive relief requiring Chase to: (i) immediately correct all furnished tradeline data with Experian, Equifax, TransUnion, and Innovis; (ii) refund the $651.00 LPI premium and all related fees, escrow shortages, and interest; (iii) apply the $1,266.65 suspense balance to principal; (iv) honor the escrow waiver effective January 14, 2025 and rescind any post-waiver re-established escrow; (v) cease further adverse furnishing pending resolution of this

action; (vi) produce complete chain-of-title evidence within 30 days or cease collection activity on the Loan; (vii) cease all automated telephone contact with Plaintiff; and (viii) credit all $1,860.00 payments to the Loan as periodic payments as of their respective dates of receipt and recompute the loan ledger accordingly.

91A. Master Exhibit Index. A Master Exhibit Index identifying Exhibits A through KK, each of which is referenced in and incorporated by reference into this Complaint, is attached hereto as an appendix and is set forth in Section VII below. Each document listed in the Master Exhibit Index is a true and correct copy of the original in Plaintiff's possession and is available for production upon request or upon service of the Complaint.

## V. PRAYER FOR RELIEF ·

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Chase, awarding:

A. Actual and statutory damages under RESPA, 12 U.S.C. § 2605(f), in an amount not less than $15,299, with statutory pattern-or-practice damages reflecting more than two years of unresolved QWRs;

B. Actual, statutory, and punitive damages under FCRA, 15 U.S.C. §§ 1681n and 1681o, in an amount not less than $60,000, reflecting five rounds of unresolved CRA disputes, Chase's April 24, 2026 written admission of inaccurate prior furnishing, and the senior-consumer harm enhancement;

C. Actual damages, restitution, and senior-victim civil penalties under the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq. and § 44-1531(B), in an amount not less than $20,000, reflecting multiple distinct categories of deceptive conduct including the May 1, 2024 misrepresentation to State Farm Insurance and the issuance of retroactively re-issued periodic statements;

D. Disgorgement of amounts collected, charged, or reported by Chase without lawful authority pending production of complete chain-of-title evidence;

E. Statutory damages under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3), of $500 per violation, trebled to $1,500 per violation upon a finding of knowing or willful violation;

F. Actual and statutory damages under the Truth in Lending Act, 15 U.S.C. § 1640, and RESPA, 12 U.S.C. § 2605(f), for Chase's violations of 12 C.F.R. § 1026.36(c) and 12 C.F.R. § 1024.35(b)(2)–(4) and (11), in an amount reflecting Chase's pattern or practice of payment misapplication established by its own contemporaneous email records;

G. Declaratory relief setting forth the parties' rights and obligations;

H. Injunctive relief as described in Paragraph 91 above;

I. Pre- and post-judgment interest as allowed by law;

J. Costs of suit and (to the extent recoverable by a pro se litigant) attorneys' fees; and

K. Such other and further relief as the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38(b).

## VII. MASTER EXHIBIT INDEX

The following documents are true and correct copies referenced in, and incorporated by reference into, the foregoing Complaint. Each is cited in the Complaint by the parenthetical form "(Ex. __)."

| Ex. | Date | Description | Cited at ¶¶ |
|---|---|---|---|
| A | 2021-06-08 | Recorded Deed of Trust / Loan Origination Record — AmeriSave Mortgage Corp., Arizona Form 3003 (Fannie Mae/Freddie Mac Uniform Instrument, MERS), recorded Maricopa County Recorder Instrument No. 20210630754 on 06/08/2021, MIN 1002772101467333588 (establishes $1,852.69 P&I). | ¶12, ¶14 |
| B | 2024-05-29 | Plaintiff's Qualified Written Request & Debt Validation Demand to Chase (14 numbered questions), Certified Mail Art. No. 9414 7118 9956 4481 8863 22. | ¶25, ¶27 |
| C | 2024-06-05 | Chase QWR Acknowledgment Letter (Ref. ID loaufryGf / CC233, P.O. Box 183222 Columbus OH). | ¶28, ¶31 |
| D | 2024-06-14 | Chase Substantive 41-Page QWR Response (Steve Brooks; Ref. ID gk6FT0VvPD / DA008; mail code LA4-6960), incl. p. 40 'Fannie Mae in its Capacity as Trustee' reference. | ¶29–¶33 |
| E | 2024-06-14 | Chase Appraisal Transmittal companion to the June 14, 2024 QWR response (Doc ID m1yzFHrDyi / CC116). | ¶29 |
| F | 2024-07-23 | Chase QWR Receipt Acknowledgment. | ¶25 |
| G | 2024-12-12 | Plaintiff's Second QWR & Debt Validation Demand to Chase. | ¶25 |

| Ex. | Date | Description | Cited at ¶¶ |
|---|---|---|---|
| H | 2024-12-12 | Chase Mortgage Note with Allonge (produced/referenced). | ¶29 |
| I | 2024-12-14 | Plaintiff's Correspondence re JPMChase Mortgage Balance Dispute. | ¶25 |
| J | 2024-12-28 | Chase Mortgage Report / Credit File Snapshot (Dec. 28, 2024 baseline). | ¶18, ¶19 |
| K | 2025-01-03 | Chase Escrow Account Closed Letter (escrow waived on/about Jan. 14, 2025). | ¶18, ¶56 |
| L | 2025-06-17 | Plaintiff's Letter to Chase Home Loans — 'Don't Owe' Dispute. | ¶25 |
| M | 2025-06-19 | Chase Mortgage Report (June 19, 2025) — scheduled-payment figures. | ¶18 |
| N | 2025-09-19 | Chase Mortgage Report (Sept. 19, 2025) — September clean baseline (Eq 9/1, Ex 9/2, TU 9/1). | ¶19, ¶22 |
| O | 2025-09-21 | Plaintiff's Notice of Error No. 3 — Servicer Dispute. | ¶25 |
| P | 2025-10-13 | Payment Misapplication Trail — Chase email correspondence documenting payments received vs. amounts alleged due. | ¶17, ¶26 |
| Q | 2026-03-24 | Plaintiff's NOE/QWR to Chase via Experian channel. | ¶23, ¶25 |
| R | 2026-06 | Three Defective Chase Acknowledgments (June 11/17/18, 2026) — Reg X §§ 1024.35(d), 1024.36(c) acknowledgment failures (¶58A). | ¶25, ¶58A |
| S & T | 2026-04-07 → 04-09 | Re-Aging Smoking Gun — April 7→9, 2026 side-by-side Experian disclosures: Feb. 2024 cell CLEAN on 4/7 → retro-coded 60-day-late ('64') on 4/9. | ¶21 |
| U | 2026-04-23 | Experian Disclosure 4/23/26 (Report No. 0450-9701-30) — Chase's furnished PITI figure and first 30-day derogatory mark. | ¶20 |
| V | 2026 | Cross-Comparison Audit — Chase's CRA furnishing vs. Chase's own records (§ 1681s-2(b) unreasonable investigation). | ¶20, ¶24 |
| W | 2026-04-14 | Chase 1st Response to NOE. | ¶26 |
| X | 2026-05-02 | Chase Late-Notice Correction No. 2. | ¶18, ¶26 |
| Y | 2026-06-08 | Chase Letter No. 2 to NOE + Certified-Mail Stamp Proof. | ¶26 |
| Z | 2026-06-22 | Chase Investor Contact Letter (Steve Brooks, Managing Director; Doc ID CC278; rec'd June 27, 2026) re-identifying Fannie Mae 'in its Capacity as Trustee.' | ¶30, ¶33 |
| AA | 2026-06 | Two-Bureau Divergence — Equifax (4/29/26) vs. Experian (6/22/26). | ¶20 |
| BB | 2026-06 | Tri-Bureau FICO 8 Damages Matrix — Equifax −47, Experian −30, TransUnion −105. | ¶22 |
| CC | 2026-06-27 | Bureau Divergence Snapshot 6/27/26 — Equifax 588 / Experian 615 / TransUnion 560. | ¶20 |
| DD | 2026-06-27 | Chase Mortgage Response (June 27, 2026). | ¶26 |
| EE | 2026 | Plaintiff's Third-Round FCRA Direct Disputes (multi-bureau). | ¶23 |
| FF | 2026 | Plaintiff's TransUnion Direct Dispute. | ¶23 |

| Ex. | Date | Description | Cited at ¶¶ |
|---|---|---|---|
| GG | 2026 | $125 Phantom Escalation — 3/30/26 Experian dispute (Report 3888-0416-02); scheduled-payment escalation $1,852 → $1,977 across 2026 Chase statements. | ¶18 |
| HH | 2026-06-11 | Chase Email (June 11, 2026). | ¶26 |
| II | 2024–2026 | Chase Response Binder (composite, 2024–2026). | ¶26 |
| JJ | 2026-06-10 | CFPB Complaint No. 260610-33947254; CFPB Complaint No. 260623-34546094; OCC complaint; AZ AG Complaint (Conf. No. WRCBB-B5EX8) + June 10, 2026 pre-litigation demand. | ¶35, ¶36A |
| KK | 2026 | State Farm Authentication Brief — Chase as First Mortgagee (Policy 03-J4-M154-8). | ¶17, ¶67 |

Respectfully submitted,

DATED: __14 JULY__ , 2026

_____

Dr. Michael Finnucci, *Pro Se*
21840 N. 39th Street

Phoenix, AZ 85050

Email: 4valuerecieved@gmail.com

## VERIFICATION

I, Dr. Michael Finnucci, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that I am the Plaintiff in the above-captioned action, that I have read the foregoing Complaint, and that the factual allegations contained therein are true and correct to the best of my personal knowledge, information, and belief.

Executed on: __4 JULY__, 2026, at Phoenix, Arizona.

_____

Dr. Michael Finnucci